Harold A. Felix, J.
The court has held a voir dire to determine the admissibility of an out-of-court statement made by the respondent to the police.. The facts as testified to follow: On the evening of November 7, 1974, Detective Grant, of the New York City Police Department, was assigned to investigate the death of one Louis Pucci. In the course of the investigation, the respondent was wanted for questioning, but the police were unable to locate him.
At approximately 3:00 a.m. on the morning of November 8, 1974, Detective Grant discovered that the respondent, together with his guardian, cousin and a clergyman among others had voluntarily entered the 25th Precinct. The detective escorted the respondent and the people accompanying him to his office and after 10 minutes or so the detective, the respondent, his guardian and a clergyman went down to Room 104. Detective Grant informed the respondent he was going to give him the Miranda warnings before any questioning and he asked the respondent to translate into Spanish to his guardian.
The detective first informed the respondent that he had the right to remain silent and that secondly anything he said may be used against him. After this second warning, the respondent stated he wanted a lawyer. The detective told the respondent that a Legal Aid -attorney would be appointed for him later in the morning. In compliance with good police procedure, the detective told the respondent he would have to give him the complete Miranda warnings. Before advising the respondent of all his rights, Detective Grant handed him a form containing the warnings and asked him to read along and write down his answers on the form. The detective then went through each of *373 the warnings and after each warning the respondent conversed with his guardian and told the detective he understood all of his rights. In addition, the respondent wrote down that he understood each of his rights by the word “yes” alongside each. Finaly the detective asked the respondent, now that he had been advised of all of his rights, whether he was willing to answer questions without a lawyer present. The respondent again conversed with his guardian and then wrote “yes ” on the form and said words in substance, “ The hell with it, I’ll tell you. ”
The respondent signed the form, as did his guardian and the clergyman who incidentally was a Monsignor of the Catholic Church. The respondent was then questioned and gave the statement which is the subject of this voir dire. The giving of the warnings and the taking of the statement took approximately a half hour.
The Appellate Division of the Supreme Court, First Judicial Department, on April .25, 1973, in accordance .with the provision of .section 724 (subd. [to], par. [ii]) of the Family Court Act, designated specific areas in police precincts for the questioning of juveniles. Pursuant to the 'above, the Appellate Division designated Room 104 as the specific area for the questioning of children in the 25th Precinct, and this iwas the room in ¡which the respondent was advised of' his rights and questioned.
In order to satisfy the requirements :of due process it is necessary that each of the four warnings required toy Miranda be given prior to the police taking a statement from a person in custody. (People v. Raymond Q., 29 A D 2d 1053.)
In People v. Grant (40 A D 2d 1036, affd. 33 N Y 2d 826), the court held that the defendant affirmatively waived 'his right to counsel ¡during custodial interrogation, although first he stated that he wanted a lawyer tout then stated that he didn’t need one.
It is axiomatic that the burden of proving the voluntariness, be it statement, .admission 'or confession, is on the People (in this instance, the petitioner) and it must toe proven beyond a reasonable doubt. (People v. Huntley, 15 N Y 2d 72; People v. Valerius, 31 N Y 2d 51.)
The respondent’s 'guardian was called to rebut the testimony of Detective Grant. She testified that both she and the respondent knew very little English and that no interpreter was present in Room 104. 'She also stated she did not understand the warnings that were .given to the respondent and that .she only signed the form because the respondent asked her to do so.
The guardian on cross-examination stated she has lived in this country for the past 25 years and that the respondent was *374 born and lived 'here in the United States for 16 years. While claiming ,she did not understand the warnings ¡given to the respondent, she ¡admitted that she told him that he should have a lawyer. Interesting is the fact that the guardian testified that her favorite television program was Perry Mason, a program televised in English. The court recalls ¡the Perry Mas-on series and ¡believes the program centered more on dialogue than on action ¡or visual effect. Respondent’s attorney sought to controvert this by questioning the guardian and drawing her affirmative response that sometimes someone was present who translated for her. During the testimony the ¡guardian on several occasions to questions put to her answered in English rather than resorting to the use ¡of the interpreter.
The court has evaluated ¡both the testimony of Detective Grant and the respondent’s guardian and has considered the oral arguments presented by respective counsel. On weight of what it concludes as the credible evidence, it finds: that the respondent and his guardian voluntarily appeared at the 25th Police Precinct ; that they were both taken to a room designated as the specific area for the questioning of juveniles accompanied by a prelate of some rank in the clerical hierarchy; that the respondent was advised of his rights in the presence of his guardian and that he had the opportunity to and did indeed converse with his guardian as each of his rights was given to him and that from the totality of the circumstances the petitioner has proven by beyond a reasonable doubt that the respondent knowingly and intelligently waived his privilege against self incrimination and that his statement was voluntarily given and thus admissible. The motion to suppress is denied.